IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ACKERMAN McQUEEN, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-05-1365-D |
| | ) |
| THE B EQUAL COMAPNY, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **O R D E R**

Before the Court are the parties' cross-motions for partial summary judgment pursuant to Fed. R. Civ. P. 56 [Doc. Nos. 60, 62] and Plaintiff's motion to exclude Defendant's expert, Bruce G. Silverman [Doc. No. 61]. By its motions, Plaintiff Ackerman McQueen, Inc. seeks a determination as a matter of law that Defendant has breached the parties' contract and is liable for certain amounts (unpaid invoices, planning fees, and an advance media commission), and seeks the exclusion of expert testimony for purposes of summary judgment and trial. Defendant 4Fun4All Acquisition Co., Inc. seeks a determination as a matter of law that Plaintiff cannot recover any amount or, at least, is not entitled to certain amounts claimed as damages. All motions have been fully briefed and are at issue.

**Statement of Undisputed Facts**

This case concerns a written agreement that appears in the form of a letter dated March 18, 2005, from Plaintiff's chief financial officer, William Winkler, to Defendant's chief financial officer, David Styka.[1]  *See* Pl.'s Motion, Ex. 1 [Doc. No. 60-2]; Def.'s Br. Supp. Mot. Partial Summ. J.,

---

[1] Mr. Styka signed on behalf of "bEQUAL," a trade name for The Edugaming Corporation, which became by merger in September, 2005, Defendant 4Fun4All Acquisition Co., Inc.

Ex. 1 [Doc. 63-2] ("Agreement"). Defendant signed the Agreement on March 25, 2005. By its terms, the Agreement appointed Plaintiff to be Defendant's exclusive advertising agency effective March 21, 2005. The Agreement was drafted by Plaintiff's representatives, but the parties negotiated the language of certain provisions, including one regarding Plaintiff's compensation for its services.[2] These services included planning and developing marketing, advertising, and communications programs; creating, preparing and implementing specific advertising, merchandising, and promotional ideas and programs; preparing and submitting working allocations for recommended programs; conceiving, writing and producing advertisements or other forms of communications; and ordering the media to be used for advertising. Plaintiff seeks by this action to recover unpaid sums allegedly due under the Agreement.

Defendant admits its failure to pay certain expenses listed in thirteen invoices totaling $25,481.55. After the application of certain credits admittedly due, Plaintiff seeks a total amount for these "Admitted Liabilities" of $23,781.08 plus interest accruing monthly at a rate of 1.5%. *See* Pl.'s Motion, ¶¶ 6-7, 23-24. Defendant "admits the invoices remain unpaid" and sets forth no specific fact that would show an issue for trial regarding these invoices. *See* Def.'s Resp. [Doc. 69] ¶¶ 7, 23. However, Defendant asserts as a legal defense to payment of these expenses that Plaintiff failed to perform all of its obligations under the Agreement, which in Defendant's view required Plaintiff to provide a written advertising plan.

Defendant also admits its failure to pay part of the "agency planning fees" provided by the Agreement. These fees, in the total amount of $275,000, were to be paid in two installments: $75,000 due upon signing; and $200,000 due on May 31, 2005. *See* Agreement, ¶ II.A. Defendant

---

[2] Although Defendant correctly argues that its suggested changes were rejected, a party's success in the negotiation of a contractual provision is immaterial to whether negotiations occurred.

made the first payment upon signing, and made additional payments totaling $75,000 under a revised schedule to which the parties subsequently agreed. However, the remaining balance of $125,000 remains unpaid. Defendant asserts the above-stated legal defense to payment (lack of a written advertising plan) and an additional defense that the full contractual amount should be reduced due to the parties' subsequent modification and early termination of the Agreement because, according to Defendant, the planning contemplated by the Agreement was to occur throughout the term of the Agreement. However, Plaintiff received on September 2, 2005, an "official, written notification that b EQUAL has terminated [Plaintiff]." *See* Pl.'s Mot. Partial Summ. J., Ex. 7 [Doc. 60-8]. Plaintiff denies the Agreement was modified as alleged by Defendant or, if it was, that any such modification relieved Defendant of its obligation to pay the remainder of the planning fees or other amounts stated in the Agreement, as discussed below.

Finally, Defendant admits its failure to make an advance payment of media commissions as stated in the following provision: "bEQUAL agrees to pay 50% of the estimated media commissions based on the planned fourth quarter media or $250,000, whichever is less, on August 1, 2005." Agreement, ¶ II.A. It is undisputed that, like the payment of planning fees discussed above, Plaintiff agreed to a revised payment schedule that extended this payment date. Plaintiff contends, however, that the payment of estimated media commissions remained due. Defendant asserts – in addition to the above-stated defenses of Plaintiff's failure to perform and an agreed early termination – that Plaintiff never earned any media commissions under the Agreement, which expressly provided that Plaintiff would be compensated by a commission "[f]or any media researched, planned, placed and administered by the agency on [Defendant's] behalf." *Id*. Further, the Agreement expressly required Plaintiff to "submit for approval" specific advertising programs and recommended communication programs. *Id*. ¶ I. C, D, F. Defendant never approved any such

3

programs, and no media was ever placed. Also, the Agreement provided that the advance payment of estimated media commissions would "be credited against the media commissions earned at 11.5% for the payment of media due December 15, 2005." (Agreement, ¶ II.A.) As stated above, Defendant decided well before that date to terminate Plaintiff's services and not to go forward with any media advertising.

Regarding termination, the Agreement provided that it could "not be terminated (except upon a material default) prior to the end of a season," that "each season of bEQUAL ends on December 31," and that Plaintiff was not obligated to perform services for the following season if the Agreement was "not renewed by December 31, 2005." *See* Agreement, ¶ XI.A-B. Regarding early termination, the Agreement provided as follows:

> Either party may terminate this Agreement at any time in the event of a material breach of this Agreement by the other party, provided that the non-defaulting party has given the defaulting party written notice specifying such default, and the defaulting party has not cured the default within thirty (30) days after receipt of such notice. . . .

*See* Agreement, ¶ XI.C. The Agreement further provided:

> Notwithstanding any termination of this Agreement, bEQUAL shall remain obligated to pay [Plaintiff] all sums due under this Agreement, including any finance charges due on delinquent sums and any taxes due . . . , <u>and such obligations shall survive the termination of this Agreement</u>.

*See* Agreement, ¶ XI.D. (emphasis added).

**Standard for Summary Judgment**

Summary judgment is appropriate if the pleadings, discovery materials, and affidavits on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that is essential to proper disposition of a claim, and a genuine issue is one that a rational trier of fact could resolve either way.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a genuine factual issue warranting summary judgment.  *Celotex*, 477 U.S. at 322-23.  If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial.  *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); Fed. R. Civ. P. 56(e).  "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."  *Adler*, 144 F.3d at 671.  The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-52.

### Discussion

1. **Admissibility of Expert Testimony**

"At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'"  *Argo v. Blue Cross and Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex*, 477 U.S. at 324).  However, the substance of the evidence must be of a kind that would be admissible at trial because in assessing a Rule 56 motion "a court necessarily may consider only the evidence that would be available to the jury."  *Id.*; *see Trevizo v. Adams*, 455 F.3d 1155, 1160 (10th Cir. 2006); *see also Thomas v. International Business Mach.*, 48 F.3d 478, 485 (10th Cir. 1995).  Here, Plaintiff asserts by a motion to strike the report of Defendant's advertising industry expert, Mr. Silverman, that his stated opinions are not relevant or admissible

evidence regarding the proper interpretation of the Agreement, and are unreliable and thus inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).[3]

In response, Defendant concedes that some opinions stated in Mr. Silverman's narrative report, such as his view of what the parties intended by their Agreement, are inadmissible. Defendant contends, however, that other opinions expressed by Mr. Silverman are admissible to interpret ambiguous provisions of the Agreement and to address terms on which the Agreement is silent, such as a method of computing damages. Plaintiff replies, correctly, that Mr. Silverman cannot testify as to the meaning of an unambiguous contract or supply additional terms for an integrated agreement.[4] *See Cook v. Oklahoma Bd. of Public Affairs*, 736 P.2d 140, 147 (Okla. 1987) (industry custom cannot be used to determine contractual obligations absent a finding of ambiguity in the contract); *see also Pitco Prod. Co. v. Chaparral Energy, Inc.*, 63 P.3d 541, 546-47 & n.25 (Okla. 2003) (a contract that is complete in itself and unambiguous "is the only legitimate evidence of what the parties intended").[5] Thus, the admissibility of Mr. Silverman's testimony hinges on whether the Agreement is ambiguous; therefore, the Court will first address the substantive issues regarding the contract.

---

[3] Plaintiff does not challenge Mr. Silverman's qualifications as an expert regarding the advertising industry.

[4] In this case, the Agreement contained an integration clause, expressly stating that the document constitutes the entire agreement between the parties. *See* Agreement, ¶ X.

[5] In diversity cases, federal courts apply state law rules of contract interpretation. *See*, *e.g.*, *First Amer. Kickapoo Operations, LLC v. Multimedia Games, Inc.*, 412 F.3d 1166, 1172 (10th Cir. 2005). In this case, although Defendant argues that Oklahoma's choice-of-law rules would result in the application of California law, Defendant agrees there is no material difference between Oklahoma and California law with respect to the issues presented and thus that Oklahoma law may be cited and applied. *See* Def.'s Br. Supp. Mot. Partial Summ. J. [Doc. 63] at 7-8.

 **2.     Rules of Contract Interpretation**

The interpretation of an unambiguous contract is a matter of law for the Court. *Pitco*, 63 P.3d at 545; *see Whitehorse v. Johnson*, 156 P.3d 41, 47 (Okla. 2007). Moreover, whether a contract is ambiguous and so requires extrinsic evidence to clarify the doubt is also a question of law for the Court. *Pitco*, 63 P.3d at 545; *see Whitehorse*, 156 P.3d at 47. The determination of whether a contract is ambiguous is made only after the application of the pertinent rules of construction. *Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376-77 (Okla. 1991); *State ex rel. Commissioners of Land Office v. Butler*, 753 P.2d 1334, 1336-37 (Okla. 1987).

The Oklahoma statutory rules of construction establish that: the language of a contract governs its interpretation, if the language is clear and explicit and does not involve an absurdity (Okla. Stat. tit. 15, §§ 154, 155); a contract is to be taken as a whole, giving effect to every part if reasonably practicable, each clause helping to interpret the others (*id*. § 157); a contract must receive such an interpretation as will make it operative, definite, reasonable, and capable of being carried into effect (*id*. § 159); words of a contract are to be given their ordinary and popular meaning (*id*. § 160); and a contract may be explained by reference to the circumstances under which it was made, and the matter to which it relates (*id*. § 163). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous. A contract is ambiguous if it is reasonably susceptible to at least two different constructions." *Pitco*, 63 P.3d at 545-56.

As explained more fully below, applying these rules of construction to the Agreement in this case leads the Court to conclude that the disputed terms of the Agreement are clear, explicit, and unambiguous. Thus, the language of the Agreement is the only legitimate evidence of what the parties intended, which intent must be ascertained from a four-corners examination of the Agreement. *See* Okla. Stat. tit. 15, §§ 154, 155; *see also Pitco*, 63 P.3d at 545-46.

**3.      Plaintiff's Performance of the Agreement**

Defendant's only asserted defense to Plaintiff's breach of contract claim with respect to unpaid invoices for expenses is a contention that Plaintiff failed to perform its obligations under the Agreement.  Defendant contends the Agreement required Plaintiff to provide a written advertising plan, but none was provided during the life of the contract.  Defendant makes this assertion without reference to any particular language of the Agreement but by citing generally, "Letter agreement, at sections I B-E."  *See* Def.'s Resp. Pl.'s Mot. Partial Summ. J. [Doc. 69], at 1-2, ¶ 6.  These contractual provisions list the services that Plaintiff would perform.  Defendant also relies on Mr. Silverman's opinion that Plaintiff promised in the Agreement and a PowerPoint document entitled "Interim Meeting Deck" dated April 14, 2005, to provide a written plan.  *See* Def.'s Resp. Pl.'s Mot. Strike Expert Report [Doc. No. 67] at 6.  Based solely on these facts and opinions, Defendant argues that "the letter agreement clearly states that a plan was to be provided."  *See* Def.'s Resp. Pl.'s Mot. Partial Summ. J. [Doc. No. 69], at 11-12.

The Court has searched the referenced parts of the Agreement and can find no statement that a written advertising plan was to be provided and, certainly, no indication that such a plan was a condition precedent to receipt of payments required by the contract.[6]  Regardless of any oral discussion or promise of a written plan, the law is clear:  "The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument."  Okla. Stat. tit. 15, § 137.

---

[6] Under Oklahoma law, courts "are disinclined to construe contract provisions as conditions precedent unless compelled by the plain language of the contract." *M.J. Lee Const. Co. v. Oklahoma Transp. Auth.*, 125 P.3d 1205, 1215 (Okla. 2005).

In short, the Court finds that Plaintiff has shown its substantial performance of the Agreement and its entitlement to damages for Defendant's failure to pay invoices for costs and expenses incurred on Defendant's behalf.[7]  Therefore, to this extent, Plaintiff is entitled to a determination as a matter of law that Defendant breached the contract and is liable for damages based on unpaid invoices in the amount of $23,781.08 plus interest accruing monthly at a rate of 1.5%, as set forth in paragraph 24 of Plaintiff's Motion [Doc. No. 60] at pages 7-8.  As of August 1, 2007, the total amount of accrued interest was $8,113.19.

**4.      Defendant's Liability for Agency Planning Fees**

Aside from the lack of a written advertising plan, Defendant's defense to liability for the remaining balance of agency planning fees required by the Agreement is a contention that the total amount due should be reduced to reflect the modification or early termination of the Agreement in September, 2005.  However, the Court finds the Agreement to be clear and unambiguous regarding Plaintiff's entitlement to be paid agency planning fees totaling $275,000.  This payment was not contingent upon the happening of any event or the provision of any specific services, and it was due and owing before Defendant decided to terminate the agency relationship.  The Agreement states in unequivocal terms that Plaintiff was entitled to be paid all sums due regardless of any termination. *See* Agreement, ¶ I.D.  "Courts should be reluctant to disturb fee arrangements freely entered into by knowledgeable and competent parties."  *McQueen, Rains & Tresch, LLP v. Citgo Petroleum*

---

[7] Defendant argues generally in support of its summary judgment motion that Plaintiff is not entitled to payment for any costs and expenses associated with media or television production because bEqual never gave its approval for such production. *See* Def.'s Br. Supp. Mot. Partial Summ. J. [Doc. 63] 11-12.  However, Defendant does not identify any particular items or invoices within this category.  Thus, the Court finds that Defendant has failed to oppose Plaintiff's summary judgment motion regarding these unpaid invoices in the manner required by Rule 56(e)(2).

*Corp.*, 195 P.3d 35, 47 (Okla. 2008) (approving fixed-fee representation agreement between law firm and corporation).[8]

Defendant's position that the parties subsequently agreed to modify or eliminate the fixed-fee provision in the Agreement is unsupported by any facts presented by the summary judgment record. According to the Oklahoma Supreme Court:

> "It is, of course, axiomatic that the parties to an existing contract may subsequently enter into a valid agreement to extinguish, rescind or modify the former contract. But as with any other agreement, the contract to rescind must be by mutual consent of the parties."

*Coston v. Adams*, 224 P.2d 955, 961 (Okla. 1950) (quoting *Webb v. Moran*, 96 P.2d 308, 311 (1939)) (citations omitted). The summary judgment record shows, at most, that Plaintiff and Defendant agreed to end their relationship in September, 2005, following Defendant's decision not to go forward with an advertising campaign. Defendant presents no fact to suggest that Plaintiff agreed to forego any payments to which Plaintiff was already entitled when the relationship ended.

In short, from an examination of the Agreement, the Court finds no ambiguity regarding the payment of agency planning fees. The required payment of a set amount was clearly intended to protect Plaintiff in the event, as happened here, that advertising agency services were provided but no specific advertising program was ever approved by the client. The full amount of agency planning fees was due before Defendant decided not to go forward with any specific advertising program or media advertising and, instead, elected to abandon the Agreement and terminate the agency relationship. Plaintiff is therefore entitled to recover the remaining unpaid amount.

---

[8] The court in *McQueen* determined that generally applicable contract principles, including ones regarding liquidated damages provisions, govern negotiated fixed-fee representation agreements between lawyers and corporate clients. Neither party in this case contends the provision for a fixed agency planning fee constitutes an unenforceable penalty under the circumstances.

Therefore, applying established contract principles to the facts shown by the summary judgment record, the Court finds that Plaintiff has established its entitlement to recover the full unpaid balance of the agency planning fees required by the Agreement in the amount of $125,000.00. Plaintiff also claims an entitlement to be paid interest on this amount, but the Agreement does not provide for the payment of interest on agency planning fees. *See* Agreement, ¶ III.H.[9] Thus, Plaintiff has failed to establish Defendant's liability for interest on the unpaid amount of $125,000.00.

**5.  Plaintiff's Entitlement to Advance Media Commissions**

Unlike agency planning fees, the Agreement provided for the payment of media commissions in exchange for specific services to be provided by Plaintiff, that is, for "media researched, planned, placed, <u>and</u> administered by the agency." *See* Agreement, ¶ II.A. (emphasis added). The use of the conjunctive "and" conveys that media advertising had to be actually placed and administered by Plaintiff in order for Plaintiff to earn the compensation to be paid as media commissions. Further, the advance payment was an amount of "estimated media commissions based on the planned fourth quarter media," and the payment was to "be credited against the media commissions earned at 11.5% for the payment of media due December 15, 2005." *Id*. The facts are undisputed that no media advertising or working allocations were ever approved, as required by the Agreement before media advertising could be placed.[10] Instead, Defendant notified Plaintiff of its decision not to go forward with any media advertising. As a result, Plaintiff could earn no media commissions under the

---

[9] This paragraph provided for unpaid sums to "bear interest at a rate of 1.5% per month from the date of the invoice until paid" but expressly excluded "the designated schedule of payments on ATTACHMENT #1." The attachment listed scheduled payments of agency planning fees.

[10] Defendant was entitled to approve recommended media advertising and to approve in advance working allocations for such programs. *See* Agreement, ¶¶ I.C-D, F.

11

Agreement. Under the circumstances, Plaintiff is not entitled to recover an advance payment of commissions that would never be earned.

Therefore, the Court finds the Agreement to be clear and unambiguous with regard to media commissions. Under the undisputed facts shown by the summary judgment record, Plaintiff is not entitled to a payment that was to be a credit against compensation to be earned when, in fact, such compensation was not earned and did not become due under the Agreement. Defendant is therefore entitled to summary judgment in its favor on the issue of liability for media commissions.

## Conclusion

For these reasons, the Court finds as a matter of law that Plaintiff is entitled to recover the sum of unpaid invoices ($23,781.08) plus 1.5% interest ($8,113.19 as of August 1, 2007, and thereafter accruing until the date of judgment) and the remaining balance of agency planning fees ($125,000.00), but Plaintiff is not entitled to recover any amount for media commissions. The Court finds Mr. Silverman's opinions are not relevant or admissible under the summary judgment rulings.

IT IS THEREFORE ORDERED as follows:

1. Plaintiff's Motion to Strike the Expert Report of Bruce G. Silverman [Doc. No. 61] is GRANTED;

2. Plaintiff's Motion for Partial Summary Judgment [Doc. No. 60] is GRANTED in part and DENIED in part; and

3. Defendant's Motion for Partial Summary Judgment [Doc. No. 62] is GRANTED in part and DENIED in part.

4.       Judgment will be entered in accordance with the summary judgment rulings.[11]

IT IS SO ORDERED this 23rd day of July, 2009.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[11] Plaintiff's Third Amended Complaint also asserted a fraud claim, which was voluntarily dismissed pursuant to Fed. R. Civ. P. 41(a)(1).  *See* Stipulation of Partial Dismissal [Doc. No. 59].

13